## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07-cr-30022-MJR |
| | ) | |
| MARK HALL, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM and ORDER

**REAGAN, District Judge:**

Before the Court are Defendant's, Mark Hall's, motion to suppress evidence (Doc. 23) and motion for disclosure of confidential sources (Doc. 26).  Based upon the record and the fully briefed motions, along with testimony and exhibits received at the April 24, 2007 hearing, the Court will now rule on these motions.[1]

### I.    Facts and Procedural History:

On February 7, 2007, a two-count criminal complaint was filed against Mark A. Hall ("Hall"), alleging that (Count 1) he possessed 100 or more marihuana plants with the intent to

---

[1]At the April 24, 2007 motion hearing, both parties orally objected to the proceedings. The Government objected on the ground that it did not believe that a hearing was required, under *Franks v. Delaware*, **438 U.S. 154 (1978)**, because Hall's motion was a conclusory attack that did not meet the standard for a *Frank*s hearing.  Hall objected to the admission of the Government's exhibits, stating that he sought *de novo* review of the magistrate judge's issuance of the warrant and not a *Franks* hearing.  However, according to the deferential standard under which the Court reviews a magistrate judge's determination of probable cause, set forth by the Supreme Court in *Illinois v. Gates*, **462 U.S. 213 (1983)**, the reviewing court should not examine *de novo* the sufficiency of an affidavit supporting a warrant.  *Gates*, **462 U.S. at 236**. The Court believes that Hall's request for a *de novo* hearing was, in reality, a misapplication of the term, since Hall stated that he wanted the Court to review the affidavit facially to determine if it was sufficient to establish probable cause.  Due to the nature of the probable cause challenges on which Hall moved to suppress evidence, the Court admitted the exhibits and proceeded with the hearing over objections.

manufacture marihuana, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and that (Count 2) he maintained a place for the purpose of manufacturing marihuana, in violation of 21 U.S.C. § 856(a)(1).

In support of the Complaint, Agent John Boerm ("Boerm") of the Metropolitan Enforcement Group of Southwestern Illinois ("MEGSI") stated that, since 1994, other members of the Collinsville, Illinois Police Department and MEGSI have investigated the narcotic-related activities of Hall for offenses relating to marihuana manufacture in the Collinsville, Illinois area. The investigation gave rise to information leading to the application for and issuance of a federal search warrant for property at 608 Autumn Avenue in Collinsville, on February 6, 2007, which was executed on February 7, 2007.

Mark Hall, one of the owners of record of the property at 608 Autumn, was present at the time the search warrant was executed, along with his daughter, Jessica Hall. During the search, the officers discovered a hydroponic marihuana growing operation (the "Grow") in the basement of the residence. The Grow consisted of 483 marihuana plants. In the master bedroom on the first level of the home, the officers found nine jars containing suspected dried marihuana, the field weight of which was determined to be approximately 273 grams of a substance that field tested positive for the presence of the chemical components contained in marihuana. A safe, located on the floor of the master bedroom, was found to contain approximately $1,194.00 in U. S. currency.

On February 23, 2007, the grand jury charged Hall on the counts set forth in the complaint and on an additional forfeiture count, pursuant to 21 U.S.C. § 853(a). The indictment specifies that the time frame for Count I was approximately January, 2006, through about February 7, 2007, and that the date for Count 2 was February 7, 2007.

II.  **Analysis**

A.  **Motion to suppress evidence**

Hall attacks the validity of the search warrant on the ground that the application for the search warrant is supported entirely by information supplied by five confidential sources ("CS") whose information is unreliable.  First, CS-1 provided information, for the years 2002 and 2004, regarding a residence known as 626 Autumn and not 608 Autumn.  Second, CS-2 provided information regarding observation of illegal activities by Hall for an unspecified date in September, 2004, at 626 Autumn and not 608 Autumn.  Third, CS-3 failed to describe with any specificity the location, amount of marihuana allegedly observed and the source of the information.  Fourth, CS-4, known only to the Collinsville Chief of Police as reliable, failed to provide evidence of reliability such as the location and amount of the Grow, and whether he had recently observed any Grow. Fifth, CS-5 is an anonymous individual who made an unsolicited telephone call only four days before the application was filed, indicating that he had unlawfully entered 608 Autumn at an unspecified time and had seen a Grow consisting of approximately 400 plants.  Thus, according to Hall, the affidavit, on its face, falls well short of providing information that would establish probable cause consistent with the Fourth Amendment to the United States Constitution.

The Government responds that probable cause existed to support the issuance of the search warrant.  The thirteen-page affidavit sets forth information received from five confidential sources for the time period from 2002 to 2007.  In addition to the confidential sources, the affidavit contained information provided by Hall's son, Casey Hall ("Casey Hall"), in February, 2006.  The affidavit detailed the 2004 arrest of Casey Hall for operating a Grow in a residence located at 626 Autumn.  Boerm received information from CS-3, CS-4 and CS-5 between December 20, 2006, and

February 2, 2007, including information from CS-3 and CS-5 that Hall had been using a lot of electrical power.  CS-5 stated that Hall had just paid a $500 utility bill.

The Government contends that corroboration of the confidential source information using third-party utility data is an indicia of reliability. Because Boerm was aware from his investigations that marihuana growing operations require the use of electrical devices, he requested the assistance of the Drug Enforcement Administration ("DEA") in obtaining records of utility bills for the residence located at 608 Autumn and, for purposes of comparison, five nearby residences.[2] He received information obtained from Ameren-IP by the DEA that, for a bill issued on January 23, 2007, electric and gas service for the property located at 608 Autumn was $484.33.  Both Ameren-IP and the Collinsville water department show Mark Hall as account holder of record for this address. A consensual search of 608 Autumn in June, 2004, revealed no Grow at that time, and electrical consumption for that month was 1,238 kilowatt hours.  In June, 2006, the electrical consumption was 3,481 kilowatt hours, and, in January, 2006, the electrical consumption was 2,104.  The average electrical consumption during 2006 showed a net increase of over 135% above the 2004 level. Moreover, the 2006-2007 electrical bills for the property at 608 Autumn showed significantly higher consumption than nearby residences for which the records were obtained.  Based on this information, Boerm stated his belief that the Grow had been operational at that location for several months preceding the filing of the complaint.

_____

[2]At the April 24, 2007 hearing, Boerm testified that he obtained billing records for six other houses.  This is a difference of no import (and may simply be a misstatement, either oral or written) because, according to Boerm's testimony and as corroborated by Government's Exhibit K, only the houses at 702 Autumn and 624 Autumn for the year 2006 were used in a review of 2006-2007 comparative billing with the house at 608 Autumn.  These structures were chosen because other structures for which billing information was obtained were known Grow houses or had an interruption in service.

Additionally, the Government asserts that information received by law enforcement from Casey Hall and from CS-5 may be viewed as reliable because it was provided against their penal interests.

The Government contends that the above actions on the part of law enforcement officials amounts to due diligence and more than accounts for any shortcomings in the origins of information provided by the confidential sources.

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." ***United States v. Peck,*** **317 F.3d 754, 755 (7th Cir. 2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967))**. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." ***Id***. **(citing *Gates*, 462 U.S. at 238; *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000)**.

Here, Hall challenges the reliability, accuracy and specificity of information supplied by five confidential sources.  Among the factors to be considered by the Court in assessing this information are the personal observations of the confidential sources, the degree of detail in the affidavit, independent police corroboration and the interval of time between the events and the application for a warrant. ***United States v. Koerth***, **312 F.3d 862, 866 (7th Cir. 2002)**.

Examining the affidavit, the Court finds that all of the ***Koerth*** factors are present, in that one or more of the confidential sources personally observed the Grow; the affidavit is meticulously detailed as to the sources of information, chronology and corroborative evidence; law enforcement corroborated the information through surveillance and review of electrical bills; and

the interval between two precipitating events (the tip from CS-5 and the receipt of the corroborative electrical bills) and the application for the warrant was a matter of days.  Based on the ***Koerth*** factors, given all the circumstances set forth before the magistrate judge, it appears that the affidavit on its face established probable cause.  ***See id***.

The affidavit contains a chronology of information, beginning in June, 2002, when Boerm received information from CS-1, Hall's nephew, that Hall had been growing marihuana indoors for years and that the Grow occupied the entire basement of Hall's residence.  According to Boerm's affidavit, this information, shown to be reliable through visual surveillance and through corroboration by other confidential sources, Casey Hall and  utility records, provided the basis for the search warrant.

Hall argues that CS-1 and CS-2 provided information as to 626 Autumn and not 608 Autumn, the property to be searched under the warrant.  According to Boerm's affidavit, Hall had been growing marihuana at both locations, at 608 Autumn between approximately 1999 and 2002 and at 626 Autumn between 2002 and 2004, when a search warrant was executed at the 626 location, 238 marihuana plants seized, and Hall and Casey Hall arrested.  Subsequently, information received by Boerm from CS-3 indicated that Hall had resumed growing marihuana at 608 Autumn.  This information was corroborated by CS-4 (who had knowledge Hall was growing marihuana in his residence), CS-5 (the tipster who personally observed the Grow) and electrical consumption.

Thus, there is no conflict in the information that was provided as to 626 Autumn and 608 Autumn that would warrant a finding that the search warrant was improvidently issued and that the evidence should be suppressed.

Hall's arguments as to the reliability and specificity of the information relied upon

in issuing the warrant also fail.   "In such situations where a magistrate has found probable cause, the courts should not invalidate a warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." ***United States v. Ventresca*, 380 U.S. 102, 109 (1965)**.   Moreover, as the Seventh Circuit stated in ***United States v. Brack*, 188 F.3d 748 (7th Cir.1999)**, "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability."   **188 F.3d at 756**.   With or without the challenged information, there is sufficient content in the affidavit, apart from the challenged material, to support a finding of probable cause. The Government has made a strong showing of reliability in at least two factors: statements by informants that were against penal interest and third-party utility data.

The Supreme Court, in ***U.S. v. Harris*, 403 U.S. 573 (1971)**, stated that common sense would lead prudent people to credit statements that are against penal interest. **403 U.S. at 583**. "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions.   Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility - sufficient at least to support a finding of probable cause to search." ***Id***.   Here, both Casey Hall and CS-5 provided information against penal interest.   Casey Hall admitted criminal acts when he described his agreement with Hall to maintain the Grow in exchange for free marihuana to smoke and free rent.   CS-5 admitted a criminal act when he stated that he had entered Hall's home at 608 Autumn without Hall's permission.   These admissions of crimes provide indicia of credibility that support a finding of probable cause to search.

The "corroboration of at least one detail" provided by an informant is an indicia of reliability. ***See United States v. Johnson*, 289 F.3d 1034, 1040 (7th  Cir. 2002)**. CS-5's tip that there was a large-scale marihuana growing operation of approximately 400 marihuana plants at

Hall's residence was corroborated by historical and comparative electrical bills obtained from Ameren-IP, coincidentally, received on the same day as C-5's tip, that showed unusually high electrical consumption levels. Within days of receiving the corroborative evidence, law enforcement officials acted upon the information and secured the search warrant. These actions by law enforcement meet the standard to establish probable cause for the magistrate judge to issue the search warrant because there was, given the totality of the circumstances, "a fair probability that contraband or evidence of a crime" would be found at the property identified in the warrant, 608 Autumn. *See Gates*, **462 U.S. at 238**.

For these reasons, the Court will deny Hall's motion to suppress.

**B.**     <u>**Motion to disclose confidential informants and confidential sources**</u>

Hall seeks 1) disclosure of names, addresses, identification numbers and files maintained by the Government of any and all confidential informants and confidential sources who participated in or were witnesses to the offense allegedly committed by him, or who assisted the Government in the prosecution of this case against him; 2) disclosure of any and all representations, promises or other consideration offered by the Government to said informants concerning the alleged violations of the informants of federal laws; 3) disclosure of any inducements offered to the informants; and 4) any records the Government maintains showing the arrest and/or conviction record of any confidential source.

According to Hall, there are compelling reasons why this information should be disclosed. Specifically, Hall states that the information provided the basis for the search warrant, that the risk to the confidential sources can be avoided by disclosing the information to Hall's counsel only, and that the confidential sources are not mere tipsters but are transactional witnesses.

The Government has refused voluntarily to provide this information.

        The Government responds that it has refused to provide this information in order to maintain the safety of the confidential sources.  Hall is already aware that CS-1 is his nephew[3]; the Government has disclosed the identity of CS-2 and has no knowledge of CS-5's identity.  Moreover, CS-3 made it clear to the Collinsville Police Department that CS-3 wished to remain anonymous.  According to the Government, the identity of CS-4 need not be disclosed, given the relative role he had in the investigation of this case.

        The Government states that its privilege of non-disclosure applies in this case in that maintaining the confidentiality of the confidential sources, pursuant to the public interest, far outweighs Hall's interest in their disclosure.  Hall's argument that the search warrant application was based on nothing but the second-hand word of confidential sources fails because information from Ameren-IP corroborated certain of the confidential source information and provided additional, independent information that gave rise to probable cause to believe that a Grow was being operated in Hall's residence.  For CS-3, in particular, the individual's interest in non-disclosure of CS-3's identity is especially strong given the possibility of danger or death for a confidential source.

        The Government asserts that the identity of the confidential sources is not material to a trial because they were not material witnesses to the crimes charged, were not present when the warrant was executed and were not involved in Hall's arrest.  The confidential sources, for purposes of this case, are merely tipsters, not material witnesses, and cannot provide testimony that is exculpatory or mitigating and, therefore, could not provide significant testimony.

---

    [3]Hall stated, in open court, that he has twenty nephews and that he does not know who CS-1 is.

Lastly, the Government argues that Hall does not demonstrate a substantial need for the confidential source information he seeks but wishes to interview the confidential sources during the course of a fishing expedition for additional information "to help in the development or the discovery of a defense, [to] locate witnesses, or [to] unveil impeachment evidence."  Doc. 26 at 2. None of the still-confidential sources will be called to testify at trial; therefore, any evidence that might impeach them would not be admissible in any event.  Additionally, because the confidential sources will not testify at trial, disclosure of promises or considerations provided to the confidential sources should not be required.

"The confidentiality of many informants must be maintained to protect their safety. The drug business contains some nasty, vindictive people." *U.S. v. Hornick,* **815 F.2d 1156, 1158 (7th Cir.1987)**.  "The 'confidential informant privilege' protects from disclosure an informant's identity and his communications with the government that may tend to reveal his identity." *United States v. Valles,* **41 F.3d 355, 358 (7th Cir. 1994) (citing** *Roviaro v. United States,* **353 U.S. 53, (1957) (additional citation omitted)**.  "The government is granted this limited privilege as a right, and need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege." *Id.* **(citation omitted)**.  "While a defendant can overcome the confidential informant privilege by demonstrating a need for the information, he bears this burden in the face of an assumption that the privilege should apply." *Id.* **(citing** *United States v. Bender,* **5 F.3d 267, 270 (7th Cir. 1993) (defense counsel must establish that defendant "possesses a genuine need of informant disclosure that outweighs the public's interest") (additional citations omitted)**.

Hall has failed to overcome the confidential informant privilege.  His first argument challenges the Government's relying on the word of confidential informants in obtaining the search

warrant.  The Court has exhaustively considered this matter, *supra*, and found that probable cause existed for the issuance of the warrant.

Hall's second argument is that the information could be disclosed to counsel only, but he has provided no case law supporting this argument, and his bare assertion that this would sufficiently protect the identity of the confidential informants is insufficient to overcome the confidential informant privilege.  If Hall were correct, the fabric of the privilege would be very thin indeed.  ". . . [T]he public has a strong interest in protecting the free flow of information in cases such as these and 'not many people want to become police informants in light of the violence within the drug subculture.'" ***United States v. Jefferson*, 252 F.3d 937, 942 (7th Cir. 2001)  (citing *United States v. Bender*, 5 F.3d 267, 270 (7th Cir.1993)**.

Hall's third argument is that the confidential informants are not mere tipsters but are transactional witnesses who were, allegedly, witnesses to crimes committed by him.  To overcome the privilege, Hall "must establish that the disclosure of the informant's identity is either 'relevant and helpful' to his defense or 'essential to a fair determination of a cause.'" ***Jefferson*, 252 F.3d at 941 (quoting *Roviaro*, 353 U. S. at 60-61)**.  Disclosure of the identity of confidential informants is not appropriate where the confidential informant was a "mere tipster" who provided law enforcement officers with information which led to the acquisition of a search warrant but who were ". . . not present when the warrant was executed and the search was conducted or when the post-arrest statements were made." ***Jefferson*,  252 F.3d at  942**.   Similarly, disclosure of the identity of the confidential sources at issue here, is not appropriate because Hall has not established that these sources did anything more than provide information which led to the acquisition of a search warrant; he has not shown that they were present when the warrant was executed and the

search conducted or post-arrest statements made.  Hall appears to be embarked on a fishing expedition rather than seeking information that is relevant and helpful or essential to a fair determination of his case.  Furthermore, as to this argument, Hall's reasoning is circular, relying again on his allegation that the search warrant was invalid.

For these reasons, the Court will deny Hall's motion to disclose confidential informants and confidential sources.

**IV.   Conclusion**

For the aforestated reasons, Defendant's, Mark Hall's, motion to suppress evidence (Doc. 23) and motion for disclosure of confidential sources (Doc. 26) are **DENIED.**

**IT IS SO ORDERED.**

**DATED this 30th day of April, 2007**


**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**